## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## (DALLAS DIVISION)

| | |
|---|---|
| In re:<br><br>PROSPECT MEDICAL HOLDINGS, INC. *et al.*,[1]<br><br>Debtors,<br><br><br>AMANDA CANNAVO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PROSPECT MEDICAL HOLDINGS, INC., *et al.*,<br><br>Defendants. | **Chapter 11**<br>**Bankruptcy Case No. 25-80002 (SGJ)**<br>**Jointly Administered**<br><br><br><br>**Adv. Pro. No.  25-08001 (SGJ)** |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Prospect.

# TABLE OF CONTENTS

FACTS ALLEGED IN THE COMPLAINT ................................................................. 1

SUMMARY OF ARGUMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 3

   I.   THE MOTION IS ANATHEMA TO THE FEDERAL RULES ........................................ 3

      A.   Defendants Do Not Claim Any Defect in the Complaint ................................ 3

      B.   Judicial Notice Does Not Turn Hearing Transcripts and Written Testimony Into
           Indisputable Facts ................................................................................... 4

   II.   ADJUDICATION OF THE UBC AFFIRMATIVE DEFENSE WITHOUT
        DISCOVERY IS ANATHEMA TO WARN .................................................................. 8

   III.   EVEN IF IT COULD BE DECIDED ON THIS RECORD, DEFENDANTS'
        MOTION WOULD FAIL BECAUSE THEY HAVE NOT SHOWN THAT A
        SALE WAS AT LEAST AS LIKELY AS NOT ............................................................. 10

      A.   The UBC Standard ................................................................................. 10

      B.   The Record Comes Nowhere Near a UBC Defense ..................................... 15

CONCLUSION ..................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Angles v. Flexible Flyer Liquidating Tr.*
  511 F. App'x 369 (5th Cir. 2013) .............................................................................11, 12, 13, 15

*Chhim v. Univ. of Tex. at Austin*,
  836 F.3d 467 (5th Cir. 2016) ...................................................................................................3

*Ctr. Operating Co., L.P. v. Base Holdings, LLC*
  Civil Action No. 3:13-CV-1584-D, 2014 U.S. Dist. LEXIS 27914 (N.D. Tex. Mar. 5, 2014) ...5

*Easom v. US Well Servs.*,
  No. H-20-2995,  2023 U.S. Dist. LEXIS 171259 (S.D. Tex. Sep. 26, 2023) .............................10

*Halkias v. Gen. Dynamics Corp.*,
  137 F.3d 333 (5th Cir. 1998) ..................................................................................................13

*In re APA Transp. Corp. Consol. Litig.*,
  541 F.3d 233 (3d Cir. 2008) .....................................................................................................3

*Kennard v. Means Indus.*,
  660 F. App'x 333 (6th Cir. 2016) ..............................................................................................5

*Law v. Am. Capital Strategies, Ltd., No. 3:*
  05-0836, 2007 U.S. Dist. LEXIS 5936 (M.D. Tenn. Jan. 26, 2007) .....................................2, 14

*Lewis v. Danos*,
  83 F.4th 948 (5th Cir. 2023) .................................................................................................6, 7

*Manix Energy Ltd. v. James*
  300 B.R. 890 (Bankr. W.D. Tex. 2003) ......................................................................................5

*Mwarabu v. Penncro Assocs.*,
  No. 4:15-CV-00160, 2017 U.S. Dist. LEXIS 10626 (S.D. Tex. Jan. 24, 2017) ........................13

*Polnac v. City of Sulphur Springs*,
  555 F. Supp. 3d 309 (E.D. Tex. 2021) .......................................................................................4

*Schmidt v. Fuchs*
  (In re Black Elk Energy Offshore Operations, LLC), Nos. 15-34287, 2021 Bankr. LEXIS 227
  (Bankr. S.D. Tex. Feb. 1, 2021) ......................................................................................3, 4, 5

*Stewart v. Giuliano*
  (In re Start Man Furniture, LLC), 647 B.R. 116 (D. Del. 2022) ............................................8, 9

*Sullivan v. Leor Energy, LLC*,
  600 F.3d 542 (5th Cir. 2010) ....................................................................................................7

*Taylor v. Charter Med. Corp.*,
  162 F.3d 827 (5th Cir. 1998) ........................................................................................4

*Thompson v. Permanente Med. Grp., Inc.*,
  No. 12-cv-01301-JST, 2013 U.S. Dist. LEXIS 60909 (N.D. Cal. Apr. 29, 2013) ....................5

*Varela v. AE Liquidation, Inc.*
  (In re AE Liquidation, Inc.) ("AE Liquidation"), 866 F.3d 515 (3d Cir. 2017) ......11, 12, 14, 15

*Walther v. McIntosh,*
  *No. 6:13-cv-472-Orl-37GJK*, 2013 U.S. Dist. LEXIS 111179 (M.D. Fla. Aug. 6, 2013) ..........5

**Statutes**

29 U.S.C. § 2102 ........................................................................................................2, 10

**Other**

20 CFR. § 639.9 ....................................................................................................11, 13, 15, 16

Fed. R. Civ. P. 12 ....................................................................................................1, 2, 7

Fed. R. Evid. 201 ......................................................................................................4, 7

Plaintiff Amanda Cannavo ("Plaintiff"), on behalf of herself and the putative class—an estimated 2,500 former employees of Defendants Prospect Medical Holdings, Inc. and its related Debtors and Non-Debtor affiliates ("Defendants" or "Prospect")—respectfully submits this opposition to Defendants' Motion to Dismiss (Adv. D.I. 14) (the "Motion"). (*See also* Defs.' Brief in Supp., Adv. D.I. 15 ("Br."); Defs.' Appx. and Exhibits in Supp., Adv. D.I. 16 ("Appx.")).

## FACTS ALLEGED IN THE COMPLAINT

Plaintiff was employed by Defendants beginning February 2024. She worked as a Registered Nurse Supervisor at Defendants' Crozer-Chester Medical Center. (Complaint, Adv. D.I. 1 ("Compl."), ¶¶ 7,9). She was told on April 21, 2025, that she would be terminated within 14 days. She was terminated on May 2, without cause. (Compl., ¶¶ 8,10). An estimated 2,500 employees who worked at, reported to, or received assignments from Crozer-Chester Medical Center Facilities were terminated around the same time and without 60 days' advance written notice of their terminations. (Compl., ¶11.)

## SUMMARY OF ARGUMENT

Defendants move to dismiss based on 800 pages of material allegedly reviewable under the judicial notice provision of Federal Rules of Evidence. But Defendants misapply the rule and even if the material merited consideration, their Rule 12(b)(6) motion would still be wanting.

Defendants all but concede their prima facie WARN Act violation, as alleged in Plaintiff's Complaint: the termination of their employees without the 60 days' advance notice required by the statute. They believe they have an affirmative defense. Under the rules of procedure, they would allege facts supporting that defense in an Answer and bear the burden of proof after discovery.

1

Instead, Defendants purport to cram an 800-page record—comprising hearing transcripts and written testimony from the proceedings in the main bankruptcy case—into a Rule 12(b)(6) motion.  They then ask the Court to do the impossible: accept under the guise of judicial notice what their counsel and witnesses said to (or filed with) the Court as *undisputed* fact.  Defendants surely know that this is not how judicial notice works, nor the adversarial search for the truth.

Entering judgment on such defenses based on discourse in general bankruptcy proceedings, while denying adversary plaintiffs discovery, would be a vacatable error, as was recently held in a similar case, *Stewart v. Giuliano* (discussed *infra*), based on the rules of civil procedure.

It would also be an affront to the WARN Act.  Congress delineated specific facts that must be proved for a defendant to avail itself of the unforeseeable business circumstances ("UBC") defense and carry its burden, which was not the focus of the discourse in the main bankruptcy case.

Defendants seek to create a new WARN Act defense that abates the need for notice when the employer is trying to find a buyer for the business (here, hospitals).  Congress created a similar defense—colloquially known as the "faltering company" defense, 29 U.S.C. § 2102(b)(1)—but it only applies when the employer is trying to raise capital or obtain new work for its business; it specifically "does not apply to attempts to sell" the company.  *Law v. Am. Capital Strategies, Ltd.*, No. 3:05-0836, 2007 U.S. Dist. LEXIS 5936, at *31 (M.D. Tenn. Jan. 26, 2007).  The other defenses pertain to occasions where the layoffs are unforeseeable.  Those defenses make no accommodation for ordinary business calamities that result in shutdowns, no matter how hard the employer tries to maintain optimism and stay afloat.  It is a 60-day, "strict

2

liability" notice statute. *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 248 (3d Cir.

2008).

    This is just that case, except that here, Defendants openly acknowledged the layoffs were

foreseeable. At the time notice was required, they knew that only a "miracle" or a "hero" could

avert the shutdown, undercutting any argument now that the shutdown was unforeseeable.

Plaintiff and the putative class are entitled to discovery to present probative evidence and not be

limited to transcripts from a related, but collateral litigation. Optimism and effort are laudable,

especially in a bankruptcy like Debtors', but they do not displace WARN's standard, which is

based on foreseeability. The operative fact is likely to be whether a sudden dramatic or

unexpected circumstance outside of Defendants' control caused the shutdown that was not

reasonably foreseeable 60 days earlier.

## ARGUMENT

## I.  THE MOTION IS ANATHEMA TO THE FEDERAL RULES

    "Under the Federal Rules of Civil Procedure and relevant precedent, a complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Chhim v. Univ. of Tex. at Austi*n, 836 F.3d 467, 469 (5th Cir. 2016) (quotations omitted)

(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Defendants concede that

Plaintiff's Complaint does exactly that. Indeed, they do not even dispute the relevant factual

matter. (*See* Br. at 14, ¶43 ("Defendant[s]…do not dispute that they issued WARN notices

to…employees…less than 60 days before their employment was terminated.")).

### A.  Defendants Do Not Claim Any Defect in the Complaint

    Affirmative defenses will be Defendants' burden to prove, which is why the Federal

Rules allow dismissal based on an affirmative defense only when "th[e] defense … appears on

the face of the complaint." *Schmidt v. Fuchs (In re Black Elk Energy Offshore Operations, LLC)*,

3

Nos. 15-34287, 19-3459, 2021 Bankr. LEXIS 227, at *36 (Bankr. S.D. Tex. Feb. 1, 2021)

(quoting *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, N.A.*, 467 F.3d 466, 470

(5th Cir. 2006)).  It is a "high bar that a defendant must hurdle" to find a defense in the complaint

itself.  *Schmidt*, 2021 Bankr. LEXIS 227, at *37.

Defendants do not attempt to clear this bar.  Instead, they introduce more than 800 pages

of exhibits, claiming all this material is properly before the Court on a motion to dismiss, under

the guise of judicial notice.

### B.  Judicial Notice Does Not Turn Hearing Transcripts and Written Testimony Into Indisputable Facts

Defendants grossly distort when judicial notice may be applicable.  As the rule's title

makes clear, "adjudicative facts" may be judicially noticed – *facts*, not documents.  And, not just

any facts: only those "fact[s] that [are] not subject to reasonable dispute."  Fed. R. Evid. 201(b).

It is a staggeringly high bar for a fact to come in through judicial notice.  To "be eligible for

judicial notice under rule 201," a fact must be "the type of self-evident truth[] that no reasonable

person could question, [a] truism[] that approaches platitude[] or banality[.]"  *Taylor v. Charter

Med. Corp*., 162 F.3d 827, 830 (5th Cir. 1998) (declining to judicially-notice another district

court's factual findings).

Judicial notice that a document exists is utterly different than notice of its factual

contents, a bright line that the courts adhere to and which Defendants elide.  *See, e.g.*, *Polnac v.

City of Sulphur Springs*, 555 F. Supp. 3d 309, 326 (E.D. Tex. 2021) (judicial notice of a 911 call

report) ("[T]he facts contained in the call are not subject to judicial notice. …[T]he Court limits

its judicial notice to the fact that a report was written, that the dispatcher wrote certain remarks

on the report, and that a 911 call was made.").

4

In other words, because Defendants proffer hundreds of pages filed with the Court, it does not mean that a single judicially-noticeable fact exists among them:

> Courts realize that there is a very crucial distinction between taking judicial notice of the fact that an entity has filed a document in the case, or in a related case, on a given date, i.e., the *existence* thereof, and the taking of judicial notice of the truth or falsity [of the] contents of any such document for the purpose of making a finding of fact.

*Manix Energy Ltd. v. James (In re James)*, 300 B.R. 890, 895 (Bankr. W.D. Tex. 2003).  Judicial notice of related proceedings is limited to "those adjudicative facts that cannot reasonably be questioned… such as the fact that [a party] filed a proof of claim [;] has not filed an objection to [a] proof of claim[;] and positions taken in filings." *Ctr. Operating Co., L.P. v. Base Holdings, LLC (In re Base Holdings, LLC)*, Civil Action No. 3:13-CV-1584-D, 2014 U.S. Dist. LEXIS 27914, at *3 n.5 (N.D. Tex. Mar. 5, 2014) (citations omitted) (collecting cases).  Hearing transcripts are no different.  Counsel's factual and legal assertions in court have the same *evidentiary* value as their written briefs, that is, none at all: "unsupported allegations of counsel or hearsay statements within the transcripts [are] not … considered" for judicial notice.  *Schmidt v. Fuchs (In re Black Elk Energy Offshore Operations, LLC)*, Nos. 15-34287, 19-3459, 2021 Bankr. LEXIS 227, at *29 (Bankr. S.D. Tex. Feb. 1, 2021).  *See also Kennard v. Means Indus.*, 660 F. App'x 333, 335 (6th Cir. 2016) (workers compensation hearing transcript) ("While we could take judicial notice of this transcript's existence … Kennard asks us to rely on the substantive representations in the transcript, which we may not do."); *Thompson v. Permanente Med. Grp., Inc.*, No. 12-cv-01301-JST, 2013 U.S. Dist. LEXIS 60909, at *11 n.4 (N.D. Cal. Apr. 29, 2013) ("The Court does not assume the truth of any factual assertions or legal arguments made at the hearing, but merely takes notice of what was said.");  *Walther v. McIntosh*, No. 6:13-cv-472-Orl-37GJK, 2013 U.S. Dist. LEXIS 111179, at *6 (M.D. Fla. Aug. 6, 2013) (judicial

notice of underlying state court proceedings) ("[T]he Court does not take judicial notice of
McIntosh's statements for their truth, but merely for the fact that they were uttered.").

Under these standards, Defendants have not established any *undisputed facts* for judicial
notice when they proffer such things as:

- Debtors' counsel's statement that "up until this morning…we were hopeful that there
  was a positive solution that could be reached here." (Br. at 17, ¶49 (citing Appx. at
  180-181).

- The state Attorney General's statement that it was "cautiously optimistic that we will
  have a long-term plan." (Br. at 18, ¶50 (citing Appx. at 301).

If Defendants were seeking to judicially-notice the fact that the parties took these
positions in the bankruptcy, that would be permissible.   But Defendants offer no authority for
the Court to credit those positions as ingenuous or grounded in truthful facts.  That requires
further inquiry.

### C. The Centrality of the Disputed Issue Further Mitigates Against Judicial Notice

Defendants are seeking to conclusively establish their UBC defense, likely the central
dispute of this adversary proceeding.  In the Fifth Circuit, judicial notice is not a means of side-
stepping "hotly contest[ed]" issues in the litigation.  *Lewis v. Danos*, 83 F.4th 948, 954 (5th Cir.
2023).

The Plaintiff in *Lewis* had been terminated after reporting sexual misconduct at the
defendant school.  She alleged, *inter alia*, that the defendant violated RICO by concealing an
investigative report on the allegations.  *Id.* at 951.  On appeal was the district court's dismissal of
her Complaint.  *Id.* at 951-952.  Before turning to the merits of the appeal, however, the appeals
court addressed Plaintiff's request for judicial notice.  She sought to judicially notice certain

6

documents from the proceedings below, including privilege logs, attorney billing records, and

the district court's earlier ruling on a protective order in which the district court made findings

regarding Plaintiff's prima facie case for concealment.  *Id.* at 954 and n.3.  The Court of Appeals

rejected the use of judicial notice to bear upon disputes central to the appeal itself:

> Federal Rule of Evidence 201 provides that a court may take judicial notice
> of an adjudicative fact if such fact is not the subject of reasonable dispute[.]
> …
>
> We deny Lewis's requests for judicial notice because the facts contained
> within those documents are the subject of reasonable dispute.  If Lewis
> sought to include those documents as proof that the district court litigation
> was ongoing, inclusion might be allowed. [Citation]. But instead, she seeks
> to use them as "proof" of specific contentions. For example, Lewis seeks to
> use the district court rulings to show that "the Appellees took affirmative
> steps to conceal their RICO conduct from Appellant [and] . . . to corrupt an
> official proceeding of the Department of Education." …
>
> As for the rulings of the district court, the parties hotly contest the facts
> contained in those decisions and continue to litigate those issues there and
> possibly on appeal.

*Id.* at 954-955.  Defendants here are attempting the same impermissible use of judicial notice: as

"proof" of their specific contention that the layoffs were not reasonably foreseeable for WARN

purposes.  Plaintiff, unremarkably, disputes that contention.  Federal Rule of Evidence 201 is not

a shortcut through this central, disputed issue.[2]

---

[2] Defendants briefly cite another avenue (beyond judicial notice) through which documents may
be considered on a motion to dismiss.  Documents which "are referred to in the plaintiff's
complaint and are central to the plaintiff's claim" may also be considered.  (Br. at13-14, ¶41)
(citing *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010)).  However, other than
that citation, Defendants do not argue that their 800-page record falls into this category.  It does
not.  Plaintiff's Complaint cited a single motion filed in the bankruptcy.  (Complaint, Adv. D.I. 1
at 5, ¶25).  That allegation in the Complaint is not "central" to Plaintiff's claim—indeed, it could
have been omitted altogether from the Complaint without consequence.  Plaintiff's claim is that
she and the putative class members were terminated without 60 days' notice.  A single reference
to the bankruptcy proceedings, as background to the Complaint, does not sweep the entire
proceedings into a Rule 12(b)(6) motion.

## II.    ADJUDICATION OF THE UBC AFFIRMATIVE DEFENSE WITHOUT DISCOVERY IS ANATHEMA TO WARN

Defendants invite the Court to adjudicate the WARN rights of an estimated 2,500

employees based on an affirmative defense, without discovery.  The flaw in this proposal is

made clearest by the WARN bankruptcy case *Stewart v. Giuliano (In re Start Man Furniture,*

*LLC)*, 647 B.R. 116, 120 (D. Del. 2022), where the bankruptcy court's acceptance of such an

invitation was found to be an abuse of discretion.

*Stewart* was a COVID-19-era case in which bankruptcy proceedings came close

(facially) to supporting a WARN defense because the pandemic seemed to answer the question

of what caused the shutdown.  The debtor/employer in *Stewart* was already in bankruptcy by

March 2020, but it claimed layoffs were hastened by the onset of the COVID-19 pandemic,

which most certainly could not have been foreseen.  Emergency lockdowns drastically reduced

customer traffic to the debtor's stores.  *Id.* at 122.  Indeed, the detrimental impact of the brand-

new COVID environment was not disputed: "The unprecedented and extraordinary adverse

effects during this period (social, economic, and business) caused by the COVID-19 pandemic

that confronted the Debtors and many other businesses are a matter of public record."  *Id.* at 122-

123.  The deterioration of the debtors' Chapter 11 aspirations—and the debtor's efforts to

salvage them—played out in real time through motions and hearings before the bankruptcy court.

*Id.* at 123.  In a March 19 hearing, debtor's counsel told the court that employees had been asked

not to come to work, a decision the debtor hoped would be "temporary" while the debtor

"explore[d] with [its] lenders and [its] other stakeholders ... other options short of outright

liquidation."  *Id.*  The layoffs were ultimately permanent.

In the WARN litigation, the debtor did not even try to jam its UBC defense into a

decision on the pleadings, as Defendants do here.  It (more modestly) moved for pre-discovery

summary judgment, on a record comprising mostly "orders or transcripts in th[e] bankruptcy case." *Id.* at 126. The bankruptcy court granted summary judgment for the debtor on its UBC defense.

The district court vacated that decision as an abuse of discretion. The court first reiterated WARN's purpose: "As Congress found, advance notice of mass layoffs is critical to protecting workers, their families, and their communities. … [I]t places workers in the best position possible to protect their families' access to food, healthcare, and education." *Id.* at 127. WARN's exceptions, the court noted, "run counter to the Act's remedial purpose and thus, are to be narrowly construed." *Id.* at 127 (quotations and citations omitted) (collecting cases).

Turning to the elements of the defense, the court noted that "[t]he employer bears the burden of proving that this exception applies by establishing that two conditions are met: (1) the circumstance was unforeseeable, and (2) the layoffs were caused by that circumstance." *Id.* at 136. The Plaintiff argued that it was the underlying economic predilections and positions of the parties, not affected by COVID, that drove the decision to terminate the employees. Because of the intensely factual nature of the defense, the court found that the bankruptcy's refusal to allow discovery was an abuse of discretion:

> The WARN Act's exceptions are narrow, fact-bound defenses that ask whether the circumstances to which the employer points actually caused the layoffs. The Bankruptcy Court denied Plaintiffs' Cross-Motion to defer ruling to take discovery on the Trustee's defenses. As Plaintiffs and Amici correctly argue, without an opportunity for discovery, employees have no ability to test this crucial question. The Court agrees that the Bankruptcy Court abused its discretion in granting summary judgment under Rule 56 without allowing Plaintiffs to take discovery under Rule 56(d).

*Id.* at 137.

Here, the parties' dispute most likely centers on the foreseeability element of the defense (rather than causation), but for the purposes of Defendants' Motion, the result is the same. Fact-

bound questions of foreseeability cannot be decided without discovery.  Defendants' bankruptcy proceeding obliquely touched on events relevant to the UBC defense, such as Defendant's efforts to find a buyer for the hospitals.  But the record generated in those proceedings was not compiled with WARN in mind; precise questions of foreseeability and relative probabilities were not germane.  Advocates and custodians of insolvent companies, by the nature of their work, harness optimism and hope until the very last straw, but WARN requires a notice 60 days before the last straw; hope and optimism do not reduce the notice period or damages.  As the *Stewart* district court understood, the nuances of WARN law can easily be lost in translation from the broader bankruptcy proceeding to the elements that must be established in the WARN adversary.

III.  **EVEN IF IT COULD BE DECIDED ON THIS RECORD, DEFENDANTS' MOTION WOULD FAIL BECAUSE THEY HAVE NOT SHOWN THAT A SALE WAS AT LEAST AS LIKELY AS NOT**

Defendants' proffer of an 800+ page record resembles a premature motion for summary judgment.  (*See* Appx.).  But even if it were considered such a "record," were this Motion converted to Rule 56, it would fall far short of supporting a UBC defense.

**A.  The UBC Standard**

"The WARN Act's exceptions are affirmative defenses.  The employer has the burden to prove that an exception applied to the layoffs."  *Easom v. US Well Servs.,* No. H-20-2995, 2023 U.S. Dist. LEXIS 171259, at *29 (S.D. Tex. Sep. 26, 2023) (citing 20 C.F.R. § 639.9).  Defendants make no meaningful effort to meet the UBC standard rigorously applied by WARN courts.

An employer may give less than 60 days' notice "if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required."  29 U.S.C. § 2102(a)(1).  The regulations explain that a "sudden, dramatic, and unexpected action or condition outside the employer's control" is indicative of an

unforeseeable business circumstance.  20 CFR. § 639.9(b)(1).  "The test" for foreseeability is not

a subjective one – "[t]he employer must exercise such commercially reasonable business

judgment as would a similarly situated employer[.]"  *Id*.  § 639.9(b)(2).

The precedent within and outside this Circuit instructs that foreseeability, for WARN

purposes, comes down to the probability that the layoffs will occur versus the probably they will

not.  "[I]t is the probability of occurrence that makes a business circumstance 'reasonably

foreseeable' and thereby forecloses use of the [unforeseeable business circumstances] exception."

*Angles v. Flexible Flyer Liquidating Tr. (In re Flexible Flyer Liquidating Tr.)* ("*Flexible Flyer*"),

511 F. App'x 369, 373 (5th Cir. 2013) (quoting *Halkias v. Gen. Dynamics Corp.*, 137 F.3d 333,

336 (5th Cir. 1998).  Although the Fifth Circuit has never articulated the quantum of probability

that makes something WARN-"foreseeable," some courts have adopted a 50/50 standard: when

layoffs are "more likely than not," they are foreseeable.  *Varela v. AE Liquidation, Inc. (In re AE

Liquidation, Inc.)*, 866 F.3d 515, 530 (3d Cir. 2017).  Showing that a particular outcome is

"possible" does not help in the UBC analysis.  *Flexible Flyer*, 511 F. App'x at 373.  Defendants'

burden of proof is to show that the non-layoff outcome here (*i.e.,* the successfully consummated

sale of the hospitals and transfer of all employees to the buyer) was at least 50% likely.

The UBC analysis is a rigorous, fact-intensive one.  WARN courts place themselves in

the shoes of a reasonable employer on the snapshot date 60 days before the layoffs.  They assess

the facts, carefully identifying which ones are decisive enough to push the needle to one side of

the probability divide.  If necessary, they trace the shifting probabilities until they culminate in

the layoffs.  *See, e.g.*, *Varela v. AE Liquidation, Inc. (In re AE Liquidation, Inc.)* ("*AE

Liquidation*"), 866 F.3d 515, 531 (3d Cir. 2017) ("The first relevant date we must consider for

WARN Act purposes is December 26, 2008, the sixty-day mark…"); *id.* (assessing the WARN

obligation over "the month between the approval of the sale and its ultimate demise is a more difficult question"); *id.* at 533 (the "days between February 21st and 24th present a closer question"); *id.* ("the chances of the sale falling apart may have reached fifty-fifty while the company waited to hear…").

Defendants' discussion of the case law is cursory.  They stop short of comparing the facts here with any case they cite.  (Br. at 15 (citing *AE Liquidation* for the proposition that the UBC standard is intended to "strike an appropriate balance" and not to impose "impracticable burden"); Br. at 16 (quoting *Flexible Flyer*'s introductory sentence that the employer there was losing money "but hope and a few good signs kept it going").

The linchpin fact pattern missing here (but which anchors the decisions Defendants cite) is the unexpected reversal of an outside party on whose exhibited course of conduct the employer had relied. The about-face by the party was the "unforeseeable business circumstance" triggering the shutdown.  In *Flexible Flyer*, the company's "lenders suddenly and without advance notice completely terminated the company's financing."  511 F. App'x at 370.

Over the years, Flexible Flyer's parent-lender established a pattern of tough-love support: "Each year, Cerberus told Flexible Flyer that it would shut Flexible Flyer down if it did not become profitable within a year.  But, despite the failure to make a profit … Cerberus never took the steps to close Flexible Flyer."  *Id.* at 371.  Cerberus "never refused Flexible Flyer's … requests for additional capital." *Id.* at 373.  A second lender (CIT), which had been advancing the company a percentage of its receivables, did not express any intention to stop funding altogether. *Id.* at 371.  Suddenly, however, "CIT informed Flexible Flyer that it would no longer be advancing credit at all. [The company] attempted to get funding from Cerberus, but this time, Cerberus refused."  *Id.*  "It was only when CIT and Cerberus both decided to cut off funding

12

completely, and did so almost simultaneously without warning, that the shutdown became

inevitable." *Id.* at 373.[3]

In *Halkias v. Gen. Dynamics Corp.*, 137 F.3d 333, 334 (5th Cir. 1998), the employer was

a contractor building aircraft for the U.S. Navy.  The Navy demonstrated a willingness to

maintain a partnership in the face of cost overruns.  *Id.*  Even as "serious cost overruns"

mounted, "both the Navy and [Defense] Secretary Cheney still expressed very high support for

the program." *Id.* at 336.  "Given that unwavering support, it seemed less than probable that the

contract would be canceled." *Id.* at 337.  The layoffs only became probable when the about-face

came: the government's top brass pivoted and issued the Navy an order to show cause why the

contract should not be cancelled.  *Id.* at 334.  At that point the employer appropriately gave

notice.  Abrupt about-turns are the hallmark of UBC defenses.  *See also Mwarabu v. Penncro

Assocs.*, No. 4:15-CV-00160, 2017 U.S. Dist. LEXIS 10626, at *11 (S.D. Tex. Jan. 24, 2017)

(client's cancellation of contract held unforeseeable where client had not communicated issues

with contract and, to the contrary, had issued defendant performance evaluations of 98-100% in

the months leading up to cancellation).

Failed attempts to sell a company are not uncommon subjects of WARN litigation.  The

same throughline characterizes those cases: reasonable expectations of a sale (and thus, a

credible UBC defense) rest on the demonstrated intent of a reliable buyer.  Indeed, the sale

negotiation process has its own milestones which can be used as rough markers of the buyer's

intent, and in turn, the probability for WARN purposes.  For example, where negotiations have

---

[3] Defendants' reference to the employer's efforts in *Flexible Flyer* in no way supports
Defendants' UBC defense.  (Br. at 18, ¶51).  The internal efforts to run a company have no
bearing when the circumstances "outside" the company are the crux of the inquiry.  20 C.F.R.
§ 639.9(b)(1).

not even reached a Letter of Intent, a sale is not especially probable.  *See Law v. Am. Capital Strategies, Ltd.*, No. 3:05-0836, 2007 U.S. Dist. LEXIS 5936, at *14 (M.D. Tenn. Jan. 26, 2007) (denying cross-motions for summary judgment on UBC defense) ("No letter of intent or final contract was ever executed by American Capital or Service Transport with CenTra or any other potential buyer for the purchase of Service Transport or its assets.").

*AE Liquidation* is an example of the UBC defense arising from a failed acquisition by its sole long-term investor-sponsor.  The contrast between *funding the finalized deal* there and the *hopes of finding an interested buyer* here could not be more stark.

In *AE Liquidation*, the buyer was a unit of the investment agency of Russia, the long-time primary investor of the employer-defendant.  It had already sunk over $200 million in the company to develop a world class aircraft.  866 F.3d at 518.  The seller's CEO was an officer of the buyer.  *Id.* at 519.  The fully negotiated sale agreement was signed and approved by the Delaware Bankruptcy Court after an evidentiary hearing (which was a pre-condition to closing). *Id.*  But, despite the buyer's "almost daily assurances" that it was able to perform its obligation under the contract to transfer the purchase money at the closing, it asked for delays because the funds were allegedly unavailable, causing the seller to run out of money and terminate the workforce to file Chapter 7.  *Id.* at 518 and 522.  The cause that the Court held was unforeseeable was not the failure to negotiate or enter into a contractual agreement.  Rather, it was the buyer's failure to perform its end of the agreement that had already been signed and court-approved.

The Third Circuit's analysis in *AE Liquidation* distinguishes it from this case: there, the bankruptcy court had approved a company's sale based on the *signed agreement* and courtroom testimony of the $200 million investor/CEO who had bankrolled the company that his purchase

14

money was coming.  It was the length of that relationship that made his assurances credible and

the default "unforeseeable:"

> This longstanding relationship bears heavily on our assessment of Eclipse's
> expectations in the face of ETIRC's continual reports that funding was on the way,
> for these were not grandiose promises from a stranger, but <u>assurances from a
> credible business partner</u> with a demonstrated commitment to Eclipse's survival.

*Id.* at 351 (emphasis added).

This is where the bar is set for Defendants.  To meet their burden, they would need to

show—not tell—that they received such bankable assurances bolstering their expectations of

selling the hospitals.  Defendants' subjective optimism in a void is irrelevant.

### B.  The Record Comes Nowhere Near a UBC Defense

Instead of applying it to the facts in light of the case law, Defendants ratchet down the

standard to meet their needs.  Rather than attempting to show that a sale was at least 50%

probable—at any point—they repeatedly urge that it was *possible* or there was a *prospect*.  *See*

Br. at 17 ("Presumably, the Court would not have [ordered Debtors and other parties to meet] if

there were *no reasonable prospect* of an outcome that would have avoided closure.") (emphasis

added); Br. at 17 (Foundation "would have not been part of a short-term solution if there were *no

prospect* of a long-term solution.") (emphasis added).  Prospects, otherwise known as

"possibil[ities]," do not make a UBC defense.  *Flexible Flyer*, 511 F. App'x at 373.

The UBC defense requires the Defendants to point to something "sudden" or "dramatic,"

20 CFR. § 639.9(b)(1), that occurred during the look-back period from the date of the layoff,

May 2, to what should have been the notice date 60 days' earlier, here March 3.  The premise of

the defense is that Debtors could not have foreseen the layoff on March 3 or thereabout.  But, at

the March 6 hearing, Debtors make clear their belief that they absolutely foresaw the layoffs,

indeed, they stated at the March 6 hearing in court that Only a "drastic[] change[]," or "something miraculous[]," could *prevent* the layoffs.  (Mar. 6 Tr., Appx. 189 and 215).

By this time, Debtors had no prospective buyers for the hospitals.  There was no "actionable funded alternative" to seeking approval to close the hospitals.  (Br. at 5, ¶12).

On March 6, the parties themselves did not see a way forward.  (*See* March 6 Tr., Appx. at 189 (counsel for Debtors) ("[W]e don't have any more ideas. And we, more importantly, we don't have any more time or any more money."); *Id.*, Appx. at 212 (counsel for Foundation of Delaware Country) ("Prospect and the Foundation have not been talking[.]")).  It was the Court that ordered face-to-face meetings, holding out hope "for a miracle."  (*Id.*, Appx. at 189); *See also id.* (Debtors' counsel) ("unless something miraculously comes up in the next couple hours, we're going to need to file our closure motion later today[.]")).

Debtors' admissions are fatal to their defense.  By March 6 at the latest, Debtors were required to give their employees notice.  The fact that they ignored their WARN obligations does not create a new window of eligibility for the UBC defense based on subsequent events.  The Motion blurs this reality by focusing almost entirely on the post-March 6 proceedings.  The defense had already been lost by this point.

Even so, any optimism after March 6 still falls woefully short of a UBC defense, which requires (a) a view that the closure is unlikely, and (b) that view being upset by an unforeseeable outside event.  Neither of these conditions existed in the post-March 6 period:

- March 11: The Harrisburg agreement resulted in funding which added two weeks to the timeline, without any reports of an interested buyer.  (Br. at 7, ¶18).

- March 19: Debtors were "more optimistic than [they] have been the last couple times that [they]'ve been [before the Court]." (Br. at 7, ¶20).  The Pennsylvania AG was "cautiously optimistic" about a long-term plan. (Br. at 8, ¶21).

- March 24: Additional short-term funding and "progress towards a transaction" with Penn.  (Br. at 8, ¶22).

- April 1: Debtors report "conversations and extensive meetings."  (Br. at 9, ¶25).

- April 8: Hospitals were "running out of time and money" and the Court, which had "thought we were on a transaction path," believed "we're kind of at the end of the road."  The Court encouraged "somebody to be a hero."  (Br. at 9-10, ¶¶ 26-29).

- April 10-21: Penn seems to offer short-term funding, but "shortly after[,] … things [take] a few turns for the worse."  The funding is actually contingent upon closing a transaction whose terms are unfavorable to Debtors' estate, and after the sending of one term sheet, Debtors are told there would be no APA.  (Br. at 10-12, ¶¶ 30-36).

April 22 was, according to Debtor's counsel, "the day that we always knew was a strong possibility in this case, some argued along the way a likelihood[.]"  (April 22 Tr., Appx. at 450).  Debtors were clear about this likelihood from the beginning to the end of the 60-day period: they were closing but for something radical and miraculous to come, which never came.  (*See* April 22 Tr., Appx. at 453 ("[A]t the end of the day, Your Honor, it came down to funding, and there just wasn't funding there to support a transition or to support a long-term future for these hospitals.").  There were no surprises, turn-abouts, or reversals that could excuse the lack of WARN notice.

17

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: July 11, 2025

Respectfully submitted,

By: /s/   *Jack A. Raisner*
Jack A. Raisner (*pro hac vice*)
René S. Roupinian (*pro hac vice*)
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

John C. Leininger
Texas Bar No. 24007544
**OTTESON SHAPIRO LLP**
5420 LBJ Freeway, Suite 1225
Dallas, Texas 75240
Telephone: (469) 397-4825
Email: jcl@os.law

*Attorneys for Plaintiff and the putative class*