SIDLEY AUSTIN LLP
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Maegan Quejada (24105999)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:    (214) 981-3300
Facsimile:    (214) 981-3400
Email:    tom.califano@sidley.com
    rpatel@sidley.com
    mquejada@sidley.com

SIDLEY AUSTIN LLP
William E. Curtin (admitted *pro hac vice*)
Jon W. Muenz (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:    (212) 839-5300
Facsimile:    (212) 839-5599
Email:    wcurtin@sidley.com
    jmuenz@sidley.com
    pventer@sidley.com
    anne.wallice@sidley.com

*Attorneys for the Defendant Debtors*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re:<br><br>PROSPECT MEDICAL HOLDINGS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-80002 (SGJ)<br><br>(Jointly Administered)<br>Rel. to Docket No. 1 |
| AMANDA CANNAVO, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>PROSPECT MEDICAL HOLDINGS, INC., *et al.*,<br>  Defendants. | Adv. Pro. No. 25-08001-sgj |

**The Defendant Debtors' Reply Brief in Further Support of Motion to Dismiss**

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Prospect. The Debtors' mailing address is 3824 Hughes Ave., Culver City, CA 90232.

1.      As the Court knows, the Defendant Debtors – along with the Pennsylvania Attorney General, Delaware County, and other stakeholders – tried desperately and reasonably believed that they *could* save the Pennsylvania Hospitals and were shocked and devastated when their collective efforts failed.[1]  This Court observed all of these actions in real-time, established a process and ordered face to face meetings to come to a resolution to avoid closure of the Pennsylvania Hospitals, and was equally disappointed with the end result.  On multiple occasions, the Defendant Debtors were painfully close to achieving a long-term solution for the Pennsylvania Hospitals before unexpected complications arose.  The Defendant Debtors' efforts, which were estate-funded even though the goal was simply to transition the Pennsylvania Hospitals to new operators and the Debtors' estate would have received no cash consideration even if successful, are amply reflected in the judicially-noticeable record.

2.      Plaintiff asks the Court to ignore that "800-page record" without acknowledging that the record reflects the Court's own experience that cannot be reasonably disputed.  The Defendant Debtors do not wish to minimize the hardship to Plaintiff and the broader community from the closure of the Pennsylvania Hospitals.  In fact, the Defendant Debtors sought to avoid closure to prevent harm, both to patients and critical staff such as Plaintiff.  Plaintiff's counsel, however, was not involved in these efforts to save the hospitals and cannot handwave them away.  The discovery that Plaintiff intends to pursue would be costly, disruptive, and would not provide the Court with any information of which it is not already aware.

3.      Based on the face of the Complaint and judicially-noticeable record, this case fits squarely within the WARN Act's exception for "unforeseeable business circumstances" (the "<u>UBC defense</u>").  As discussed below, Plaintiff's opposition arguments are without merit.

---

[1]   Capitalized terms are defined in the Defendant Debtors' moving brief.

4.      <u>First</u>, there is nothing "anathema to the Federal Rules" about the Court taking judicial notice of what transpired in its own courtroom.  The Court is not required to "unsee" what it experienced with its own eyes.  As the Fifth Circuit made clear in *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, courts may consider on a motion to dismiss any "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  976 F.3d 585, 588 (5th Cir. 2020).  That includes the record of prior court proceedings.  In *Basic*, the Fifth Circuit affirmed dismissal based on the application of an affirmative defense where the district court took judicial notice of public disclosures and the "record of the 1999 state-court litigation." *Id*.  The Fifth Circuit found that these documents "fall squarely within the ambit of [FRE] Rule 201(b)," which concerns judicial notice, given that "the existence of the documents, *and the contents therein*, cannot reasonably be questioned."  *Id*. at 589 (internal quotation omitted; emphasis added).

5.      Likewise here, the court transcripts on which the Defendant Debtors rely, and the contents therein, cannot reasonably be questioned.  It cannot reasonably be questioned, for instance, that on March 6, 2025, at the outset of the WARN Act's look-back period, the Court ordered the Defendant Debtors and other stakeholders to meet in Harrisburg, Pennsylvania to negotiate a potential transaction that would keep the Pennsylvania Hospitals open.  Mot. ¶ 18.  It cannot reasonably be questioned that other parties in interest repeatedly voiced their optimism that a long-term resolution would be reached.  *Id*. ¶¶ 19-23.  It cannot reasonably be questioned that the Defendant Debtors obtained millions of dollars in interim funding that allowed them to continue working to finalize that resolution.  *Id*. ¶¶ 18, 22.  Contrary to Plaintiff's contention, the Defendant Debtors are not asking the Court to rely on the truth of what they said merely because they said it on the record.  Rather, the *facts* themselves are in the record.

2

6. Plaintiff also asserts that the application of judicial notice would be "anathema to WARN," Opp. at 8, relying on a single, easily-distinguishable case, *Stewart v. Giuliano (In re Start Man, LLC)*, 647 B.R. 116 (D. Del. 2022), where the Delaware district court reversed a bankruptcy court's order on the basis that additional discovery was necessary to address the UBC defense. *Stewart* says nothing at all about judicial notice or whether it can be applied on a motion to dismiss WARN Act claims. *Stewart* does not suggest that the court was presented with a judicially-noticeable record anywhere approaching the extensive record in this case.[2] Nothing in *Stewart* – or the text of the WARN Act – undermines the Court's ability to rely on that record in accordance with the Fifth Circuit's holding in *Basic*.

7. Second, Plaintiff is wrong that the record "fall[s] far short of supporting a UBC defense." Opp. at 10. Plaintiff asserts that the Defendant Debtors "absolutely foresaw the layoff," "had no prospective buyers," and "did not see a way forward." Opp. at 15-16. According to Plaintiff, the Defendant Debtors were merely "optimistic" about their chances of saving the hospitals, but such "[o]ptimism . . . do[es] not displace WARN's standard." *Id*. at 3. That is simply not what the judicially-noticeable record reflects.

8. As discussed in the moving brief at ¶¶ 18-23, on March 6, 2025, the Court itself saw a way forward in ordering face-to-face negotiations, which the Defendant Debtors pursued with vigor. *See, e.g.*, *In re AE Liquidation, Inc.*, 866 F.3d 515, 531 (3d Cir. 2017) ("As it could hardly be said that the failure of the sale appeared probable to Eclipse on the very day the Bankruptcy Court approved it, Eclipse cannot be held liable for its failure to provide WARN Act

---

[2] Unlike here, the *Stewart* "Plaintiffs did not contest foreseeability; rather, they argued that the Trustee had not satisfied his burden of demonstrating that the [COVID-19] pandemic 'caused' the layoff," which the court found depended on an analysis of "decisional documents and communications leading up to the employee terminations." 647 B.R. at 136. There is no indication in the *Stewart* decision of a judicially-noticeable record bearing on this inquiry.

3

notice to its employees prior to January 23, 2009."). Only five days later, the Defendant Debtors successfully negotiated for $7 million in funding, which prompted "kudos" from the Court, and another $13 million in funding followed soon thereafter. The Defendant Debtors used the time provided by that funding to negotiate a long-term solution with various potential transaction partners, a process they undertook in conjunction with the Pennsylvania Attorney General, Delaware County, and other stakeholders.

9. These facts gave the Defendant Debtors good reason to be optimistic that they would avoid layoffs – an optimism shared and expressed by the Court, the Pennsylvania Attorney General, Delaware County, and other stakeholders. *See* Mot. ¶¶ 18-23. Moreover, contrary to Plaintiff's assertion that the WARN Act imposes "strict liability," the UBC defense *does* provide companies with room for such optimism. *See In re Yellow Corp.*, 2024 WL 5181660, at *12 (Bankr. D. Del. Dec. 19, 2024) ("[T]he caselaw recognizes that employers are permitted to take a reasonably optimistic view of their future prospects"); *see also Mwarabu v. Penncro Assocs., Inc.*, 2017 WL 367543, at *4 (S.D. Tex. Jan. 24, 2017) ("[T]he WARN Act is not intended to deter companies from fighting to stay afloat[.]"); *Roquet v. Arthur Andersen LLP,* 398 F.3d 585, 589 (7th Cir. 2005) ("There is evidence in the record suggesting that Andersen could have reasonably foreseen the indictment by March 1 . . . But hope still remained that the dreaded act could be stalled if not avoided. We believe that a reasonable company in Andersen's position would have reacted as it did. Confronted with the possibility of an indictment that threatened its very survival, the firm continued to negotiate with the government until the very end and turned to layoffs only after the indictment became public."); *Reynolds v. Direct Flow Med., Inc.*, No. 17-CV-00204-KAW, 2019 WL 1084179, at *5 (N.D. Cal. Mar. 7, 2019) ("Defendants could argue that the case falls within the 'unforeseen business circumstances' exception because at the time Defendants would have

been required to give notice . . . [they were] still negotiating with Haisco for additional funding that would have allowed Defendant DFM to continue its operations.").

10. Plaintiff asserts that "[t]he linchpin fact pattern missing here . . . is the unexpected reversal of an outside party on whose exhibited course of conduct the employer had relied," Opp. at 12, but those "linchpin" facts are found throughout the record. On March 6, 2025 – three days after the date on which Plaintiff contends the look-back period begins – the Defendant Debtors reported that they had just *minutes before* lost an anticipated transaction that would have provided a short-term source of funding. March 6, 2025 Tr., Dkt. 916 at 3-4 ("until about 25 minutes before the hearing started . . . we thought that we had a short-term solution for funding . . ."). The Defendant Debtors later reported the negotiation of a term sheet with Penn Medicine, only to face an "unexpected reversal" with respect to details of that potential transaction, and then later the collapse of a potential broader transaction with a consortium of transaction partners. April 10, 2025 Hearing Tr., Dkt. 1548 at 3, 5; April 22, 2025 Hearing Tr., Dkt. 1627 at 11.

11. The fact that these expected transactions did not come to fruition – or even that there were warning signs visible with 20/20 hindsight – does not undermine the UBC defense. *See In re Muffin Mam, Inc.*, No. CV 21-02909-HB, 2025 WL 1531679, at *7 (Bankr. D.S.C. May 7, 2025) ("[A] reviewing court must be careful to avoid analysis by hindsight; the trail of harbingers of an unforeseen event always looks brighter in retrospect.") (citations omitted); *In re Yellow Corp.*, 2024 WL 5181660, at *12 (Bankr. D. Del. Dec. 19, 2024) ("The question asked by the WARN Act is not whether, after the fact, one can identify signs of trouble that might have existed

5

60 days before the layoff. Rather, the relevant question is whether the closure can be said to have been 'probable' at any point before it occurred.").[3]

12. <u>Third</u>, the UBC defense only requires a company to exercise judgment as would "a similarly situated employer." *In re Flexible Flyer Liquidating Tr.*, 511 F. App'x 369 (5th Cir. 2013); see *also Roquet*, 398 F.3d at 588 ("[A] company will not be liable if, when confronted with potentially devastating occurrences, it reacts the same way that other reasonable employers within its own market would react."). Plaintiff's arguments, and the cases on which the opposition relies, betray that her counsel has a fundamental misunderstanding of the unique market in which the Defendant Debtors operated – a market in which business decisions have life or death consequences. It is notable that Plaintiff's opposition brief does not cite a single case concerning layoffs at a hospital or any healthcare-focused business.

13. According to Plaintiff, the Defendant Debtors should have responded to the Court's March 6, 2025 order to negotiate in Harrisburg by promptly issuing WARN Notices, thereby risking the immediate departure of doctors, nurses, and other critical hospital staff. That would have been contradictory, self-defeating and dangerous, and at a minimum a poor business decision for a healthcare company that values patient safety above all else. In addition, it is not what the law requires. *See Roquet*, 398 F.3d at 589 ("[I]n our view, a mass layoff at that point would have been a poor business decision . . . We think the company, faced with this unprecedented cataclysmic event, reasonably needed a little time to assess how things would shake out. And it was not unreasonable for the company to think it could survive the carnage until early April, when on the 8th it ran up the white flag of surrender and gave the bad news to its employees."); *Watson*

---

[3] These facts also undermine Plaintiff's attempt to distinguish the Fifth Circuit's *Flexible Flyer* decision, where the defendant had reason to be optimistic and worked "until almost the last moment" before an unexpected lack of funding doomed the company. 511 F. App'x 369, 373 (5th Cir. 2013).

6

*v. Michigan Indus. Holdings, Inc.*, 311 F.3d 760, 765 (6th Cir. 2002) ("WARN was not intended to force . . . employers to provide WARN notice and close [their] doors when there is a possibility that the business may fail at some undetermined time in the future. Such a reading of the Act would force many employers to lay off their employees prematurely, harming precisely those individuals WARN attempts to protect."); *In re AE Liquidation, Inc.*, 866 F.3d 515, 530 (3d Cir. 2017) (The "probability" standard laid out in *Halkias* and *Flexible Flyer* seeks to avoid imposing "an 'impracticable' burden on employers that could put both them and their employees in harm's way.").

14.     As stated to the Court previously, the Defendant Debtors deeply regret that they were forced to wave the "white flag of surrender," but they do <u>not</u> regret that they exhausted all reasonable efforts before doing so. As a matter of law, the WARN Act does not impose liability under these indisputable facts.

Dated: July 18, 2025
Dallas, Texas

      /s/ Rakhee V. Patel
**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Rakhee V. Patel (00797213)
Maegan Quejada (24105999)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone:   (214) 981-3300
Facsimile:   (214) 981-3400
Email:   tom.califano@sidley.com
       rpatel@sidley.com
       mquejada@sidley.com

*and*

William E. Curtin (admitted *pro hac vice*)
Jon W. Muenz (admitted *pro hac vice*)
Patrick Venter (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:   (212) 839-5300
Facsimile:   (212) 839-5599
Email:   wcurtin@sidley.com
       jmuenz@sidley.com
       pventer@sidley.com
       anne.wallice@sidley.com

*Attorneys for the Defendant Debtors*

**Certificate of Service**

I certify that on July 18, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Rakhee V. Patel*
Rakhee V. Patel
